IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RAYMOND McKENZIE, ) | CASE NO. 1:23 CV 328 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| TARGET CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | MEMORANDUM OPINION |
| ) | |

This matter is before the Court on Defendant, Target Corporation's Motion for Summary Judgment. (ECF #22). Plaintiff filed a Response in Opposition, and Defendant filed a Reply in support of its' position. (ECF #23, 24). Mr. McKenzie claims that, while trying to pull a loaded skid from his truck onto the docking plate, his feet slipped on a clear, slippery substance, causing him to fall. (ECF #2, Ex. A). The Defendant argues that Mr. McKenzie has not provided any evidence that it was negligent in any way.

## Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The movant "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying evidence "which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this requirement, the burden shifts to the nonmoving party to cite materials that show the presence of a genuine dispute for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court will view the factual issues and draw all reasonable inferences in the light most favorable to the non-moving party. *National Enterprises Inc. v. Smith*, 114 F.3d 561 (6th Cir. 1997).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). If the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### Facts[1]

Mr. McKenzie filed this litigation to recover for injuries sustained when he fell while unloading his truck at the Target store docking area, on November 27, 2019. Mr. McKenzie is a

---

[1] The facts are viewed in the light most favorable to Mr. McKenzie, the non-moving party. Unless otherwise stated, the facts presented have been taken from the Plaintiff's Deposition, and the video tape of the loading dock at and around the time of his fall.

truck driver/delivery person for Saia Trucking, and was making a delivery to the Target store in Avon Ohio. (ECF #19-1, PageID #191, 212). He backed his truck up to the middle receiving bay. The bay has a dock plate that connects the back of the truck to the receiving area inside the store. (ECF #19-1, PageID #228-229). When Mr. McKenzie came into the loading area and walked over to the dock plate area, there was no water on the floor. (ECF #19-1, PageID #230). For about 43 seconds Mr. McKenzie walked and stood on the dock plate, including the area he was on when he fell. During that time, he viewed, touched, jumped on, and otherwise manipulated sections of the plate, as necessary to connect it to the back of his truck. (ECF # 21, Ex. O at 10:15:59 - 10:16:42). At his deposition, when asked if he was looking for hazards as he extended the dock plate, he responded: "At the moment, no. The dock plate was clear." (ECF #19-1, PageID #238). After flattening the dock plate so that it extended to connect with his truck, he looked down at it. He did not see any water or other liquid substance. (ECF #19-1, PageID #237-238). If he had seen a puddle, he testified that he "would have said something." (ECF #19-1, PageID #238).

      Once the docking plate was extended into his truck, Mr. McKenzie obtained a pallet jack from a Target employee and used it to remove his delivery load from his truck. After he had the forks of the pallet jack under the load and had levered it up, he started pulling strenuously on the jack to pull the load off from the truck. He adjusted and pulled on the jack for approximately 42 seconds, alternating directions and trying to get the load to move off the truck. (ECF #21, Ex. O at 10:17:15-!0:17:57; *see also*, ECF #19-1, PageID #239). Throughout this time that the load appeared to be stuck, he was standing and moving on top of the dock plate. (Id.). A Target employee, Tammy Asire testified, during her deposition, that during this time, she walked over to

Mr. McKenzie and put her hand on his back to get his attention and told him that the load was "caught" on the inside of the doorway. (ECF#19-2, PageID #372-373). When Mr. McKenzie was asked in his deposition whether Tami came over before he fell to tell him he had a bad angle, he stated that she "doesn't come over and talk to me while I do that." Although the video does not have audio, it does show Ms. Asire walk up to Mr. McKenzie while he is struggling to get the load off the truck, put her hand on his back, and lean in toward him. (ECF #21 at 10:17:24-30). When shown the video, Mr. McKenzie first said that she did not say anything about the angle, but then admits that he does not specifically recall what she said or did not say. (ECF #19-1, PageID 267-268). When she approached to put her hand on Mr. McKenzie's back, Ms. Asire walked onto the dock plate. She testified that "[t]here was nothing on the deck plate to slip on. There was no water. There was no moisture." (ECF #19-2, PageID # 373). Ms. Asire testified that the area where Mr. McKenzie fell was 100 percent dry. (ECF #19-2, PageID #375). Mr. McKenzie also testified that he had not noticed any liquid or slippery substance on the dock plate until he fell. (ECF #19-1, PageID #243).

After Ms. Asire stepped away, Mr. McKenzie continued to struggle, pulling on the pallet jack until he fell. (ECF #19-1, PageID # 252). He claims that he slipped on "a clear, shiny substance on the dock plate," and that he did not know what it was. (ECF #19-1, PageID #244. 246). He testified that he pointed it out to Ms. Asire after he fell. (ECF #19-1, PageID #244). He did not touch (or "test") it with his finger. (ECF #19-1, PageID #244). He did not give a clear answer when asked if the substance was wet, or if his pants got wet when he fell. (ECF #19-1, PageID #246, 257). During his deposition, he never described the dock plate as wet, but rather would only say that it was "slick" or "shiny." He affirmatively stated that he saw no

puddle, no liquid. (ECF #19-1, PageID #257-258). Later in his deposition, he testified that "the whole plate, – the whole dock plate was slick." (ECF #19-1, PageID #269). Video of the fall shows that Ms. Asire and another man approached Mr. McKenzie when he fell, he turned his back to them and then all three face the dock plate for a second. Ms. Asire and the other man then walk away, but it is unclear whether they spoke, and there is no audio of what may have been said. (ECF #21, Ex. O at 10:17:59 - 10:18:08). No one moved to look at the spot where Mr. McKenzie fell, or to look closer at the dock plate in general. No one touched the dock plate to check for a substance. No one took any steps to clean up the deck plate. After shaking off a leg cramp, Mr. McKenzie went right back to the dock plate, continued to stand and move around on the same area of the plate, and continued to pull strenuously on the pallet jack until the cargo came off the truck. (ECF #19-1, PageID #244-245, 250). After unloading the cargo, Mr. McKenzie again walked across the deck plate multiple times, and stood on the plate to detach it from his truck. (ECF #21, Ex. O at 10:20:37; 10:21:42-47; 10:21:54, 10:22:18-41). At no time, other than at the moment of his fall, did he appear to slip, slide, or otherwise lose his footing. At no time did he appear to be hesitant or cautious in his movements.

When he was questioned about what happened immediately following his fall, Mr. McKenzie acknowledged that Ms. Asire witnessed the fall, acknowledged that he did not ask her for medical help, and acknowledged that after he "shook it off" he went right back to pulling strenuously on the pallet jack. Despite being asked about his interactions with Ms. Asire after his fall, at no time during his deposition did he mention that Ms. Asire, allegedly told him that the floor had recently been mopped. However, in an affidavit filed as an exhibit to his Opposition to Summary Judgment, Mr. McKenzie states that "[f]ollowing my fall, I pointed out the wet, slick,

substance...and she stated to me that they had just got done mopping up in that area." (ECF #23-1, PageID #447). Ms. Asire testified, during her deposition, that she did not tell Mr. McKenzie that [Target] just finished mopping up in the area. (ECF #19-2, PageID #375). She also testified that she has no memory of anyone mopping up in that area before Mr. McKensie unloaded his truck.

## Analysis

To survive summary judgment on his negligence claim, Mr. McKenzie must provide evidence that shows the existence of a genuine issue of fact material to establishing the following elements: (1) the existence of a duty; (2) a breach of that duty; and, (3) an injury proximately resulting from such a breach. *Texler v. D.O. Summers*, 81 Ohio St.3d 677 (1998); *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142. The mere fact that someone falls or is injured on a business property does not create a presumption of negligence. *Green v. Castronova*, 9 Ohio App.2d 156, 161 (1966); see also, *Parras v. Std. Oil Co.*, 160 Ohio St. 315 (1953); *J.C. Penny Co., Inc. V. Robison*, 128 Ohio St.628 (1934).

Under Ohio law a person who has rightfully entered and remained on the premises of another at the express or implied invitation of the owner, for a purpose beneficial to the owner, is an invitee. The parties do not dispute that, as a vendor delivering product to the owner of the premises, Mr. McKenzie was an invitee of Target at the time of the fall. An owner owes an invitee the duty to keep the premises in a reasonably safe condition and to warn of any latent or concealed dangers that the business knew or should have know about. *See, e.g., Jones v. H.& T. Enterprises*, 88 Ohio App.3d 384, 388 (1993); *Keiser v. Giant Eagle, Inc.*, 103 Ohio App.3d 173,

176 (1995).  A business does not have to warn of open and obvious dangers.  *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79 (2003).

      Mr. McKenzie claims that Target breached this duty by allowing the deck plate to become or remain slick due to the presence of a foreign substance.  In order to recover for injuries sustained when an invitee slips and falls due the presence of a foreign substance on a walkway or floor, a plaintiff must show the following:

> (1) That the defendant through it officers or employees was responsible for the hazard complained of; or
>
> (2) That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
>
> (3) That such danger had existed for a sufficient length of time to reasonably justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943); *Orndorff v. ALDI, Inc.*, 115 Ohio App.3d 632, 635-636 (9th Dist. 1996).

      There is no evidence that any Target employee caused, or knew of, or should have known of any dangerous condition on the deck plate before Mr. McKenzie's fall. (ECF #19-2, PageID #375).  There is no evidence that anyone informed Target of the alleged hazard before Mr. McKenzie fell.  Both Mr. McKenzie and Ms. Asire testified that there were no signs of wetness or slickness on the deck plate prior to Mr. McKenzie's fall.  (ECF #19-1, PageID #243, 245; ECF #19-2, PageID #373, 375).  Mr. McKenzie did not tell anyone that the dock plate was slick or slippery prior to his fall.  In fact, there is no evidence that the dock plate was, in fact, wet or slippery prior to his fall.  All testimony, Mr. McKenzie's included, indicates that the deck plate

was not wet and there were no visible hazards prior to his fall. Further, the video shows that both Mr. McKenzie and Ms. Asire had been on the dock plate before his fall without any sign of hesitation or slipping. Mr. McKenzie, also returned to the dock plate after his fall and continued to move without caution or hesitation. It defies reason to believe if the whole dock plate was so slick as to be unreasonably unsafe, that after falling, Mr. McKenzie would continue to walk, push and pull strenuously while on it without making any attempt to wipe it down.

There is also no evidence that Target caused the allegedly dangerous condition. Even if the Court were to accept Mr. McKenzie's claim that Ms. Asire told him after his fall that they had "just mopped up," in that area, there is no evidence as to how long ago it was mopped, what was mopped up, or what it was mopped with. Despite having video footage from that morning, there is no video evidence of anyone mopping, or of anything at all that happened more than a minute prior to Mr. McKenzie's arrival on the loading dock. There is also no evidence that, even if it had been previously mopped, the floor was still wet from mopping. Mr. McKenzie himself testified that, despite walking on and looking at the dock plate for minutes before his fall, he did not see any puddles or wetness on the dock plate. He even had to bend down and touch the dock plate to pull the chain expanding the plate to reach his truck and never felt any wet or slippery substance. He never tried to determine what substance was on the dock plate after his fall, and never tried to clean or wipe down the dock plate before going back to work in that area. There is no evidence to contradict Ms. Asire's testimony that the dock was 100 percent dry prior to Mr. McKenzie's fall. There is no evidence to support Mr. McKenzie's claim that the dock plate was slick or slippery, other than the fact that he fell. The mere fact that he fell does not prove that Target created an unreasonably safe environment. *See, e.g., Paschal v. Rite Aid Pharmacy, Inc.*,

18 Ohio ST.3d 203 (1985). Neither does seeing a clear, shiny substance. Even if he did see a clear, shiny spot when he fell, without touching the substance, he could not prove that it was actually slippery. Yet, he testified that he did not touch the substance or attempt to clean it up after his fall.

There is no evidence that would show that Target breached its duty to keep the loading area in a reasonably safe condition, or that it failed to warn of a known latent or concealed danger. There is no evidence that any guest or worker had ever previously fallen or that Target would otherwise have had any reason to believe that the deck plate constituted a dangerous condition. Therefore, there is insufficient evidence to support a conclusion that Target was negligent, or that its negligence with the proximate cause of Mr. McKenzie's injury.

## Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is hereby GRANTED, and this case is dismissed with prejudice, each party to bear its own costs. IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: March 5, 2024